UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Mark Higbee,

      Plaintiff,

v.                            Case No. 18-13761

Eastern Michigan University, *et. al.*,     Sean F. Cox
                                United States District Court Judge

      Defendant.
_____/

**OPINION AND ORDER GRANTING INSTITUTIONAL DEFENDANTS' MOTION TO DISMISS (ECF No. 28)**

In September 2016, racist graffiti appeared on the campus of Eastern Michigan University. Students protested, and the University instituted disciplinary actions against the protestors. Almost a year later, a former student was arrested for the vandalism. In the arrest's aftermath, Plaintiff—a history professor at the University—posted a message in a public Facebook group, criticizing the University's response to the graffiti and referring to African American administrators as ''HN in C' functionaries." The University interpreted this phrase as a racial slur and suspended Plaintiff, without pay, for one semester. Plaintiff filed a grievance through his union, and an arbitrator reversed his suspension.

On December 4, 2018, Plaintiff filed this lawsuit, alleging two sets of claims. First, Plaintiff brings retaliatory discharge claims under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") against the University and its Board of Regents ("the Institutional Defendants"). Second, Plaintiff brings First Amendment retaliation claims, under 42 U.S.C. § 1983, against the individual Regents

and other administrators who decided to punish him for the post ("the Individual Defendants").[1]

On February 14, 2019, the Institutional Defendants filed a motion to dismiss the ELCRA claims. (ECF No. 28).[2]  For the reasons below, the Court will grant the Institutional Defendants' motion and dismiss the ELCRA claims.

## BACKGROUND

Plaintiff Mark Higbee is a Professor of American History at Eastern Michigan University. Defs. Stat. of Material Facts ¶ 1. (ECF No. 27, PageID 94).  Higbee teaches courses on African American History. *Id*. at ¶ 2.

In September 2016, racist messages were spray-painted on a residence hall at the University. *Id*. at ¶ 13; Ex. 3 (ECF No. 27-4).  More racist graffiti appeared the next month. *Id*.  Students protested the graffiti by organizing a peaceful sit-in at a University building. *Id*.  After the protesters refused to leave the building at closing time, the University disciplined them by issuing formal reprimands and deferred suspensions. *Id*.  The University later dropped all disciplinary action against the protesters. *Id*.  Pl.'s Counter-Stat. Of Material Facts ¶ 15. (ECF No. 35, PageID 584).

More than a year after the first act of vandalism, an African American former student of the University was arraigned on criminal charges for creating the graffiti. Defs. Stat. of Material Facts. ¶ 16.  In the aftermath of the arraignment, Higbee wrote the following post in "EMUTalk," a public Facebook group:

---

[1]The Court has supplemental jurisdiction over Higbee's ELCRA claims because they are so related to Higbee's jurisdiction-invoking § 1983 claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

[2]The Individual Defendants also filed a motion to dismiss the First Amendment retaliation claims, asserting qualified immunity. The Court will issue a separate Opinion and Order on the Individual Defendants' motion.

EMU administrators, a small group of well paid white guys in suits (plus one woman and a few lower level "HN in C" functionaries), lacked the insight to imagine that they could ever, possibly, be remotely seen as responsible for institutional racist practices. And so they continued to act as the aggrieved party, needlessly alienating students who objected to racism. Why EMU officials, earning six figures or more, took this stance can only be explained by a combination of 1. ignorance about what racism is, 2. overconfidence that they are the good guys, 3. a lack of knowledge of EMU specifically and of higher education generally.

Compl. ¶ 26.

In their motion to dismiss, the Institutional Defendants argue that "HN in C" is commonly understood to stand for "Head Nigger in Charge." Institutional Defs.' Br. 4, n.5 (ECF No. 28, PageID 142) (collecting cases in which a court has noted this meaning). In response, Higbee contends that, among scholars of the African American experience, "HN in C" is commonly understood to mean "Head Negro in Charge." Higbee Aff. ¶ 5. (ECF No. 34, PageID 524-525).[3]

On December 13, 2017, the University suspended Higbee, without pay, for one semester and required him to attend and complete a one-on-one training session with a professional consultant. Compl. at ¶ 27. The University also banned Higbee from campus and from using its email system. *Id*.

As a member of the University's Chapter of the American Association of University Professors, Higbee grieved his suspension and discipline. *Id*. at ¶ 29. On July 23, 2018 arbitrator Barry Goldman reversed the University's sanctions. *Id*. at ¶ 31.

On December 4, 2018, Higbee filed his seventeen-count complaint in this action. In the first two counts, Higbee alleges state-law claims of retaliatory discharge against the Institutional

---

[3]At the motion-to-dismiss stage, the Court's analysis is limited to the facts outlined in the complaint. However, the Court includes the parties' positions regarding the meaning of "HN in C" to provide context, and to fully summarize the arguments raised in the parties' briefing.

Defendants.

On February 14, 2019, the Institutional Defendants filed the pending motion to dismiss (ECF No. 28), wherein they argue that Higbee's Facebook post is not "protected activity" under the ECLRA's prohibition against retaliation. Higbee filed a response to this motion. (ECF No. 31). The Court heard oral argument on this motion on May 30, 2019.

## ANALYSIS

### I.       Applicable Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted.  The Court must construe the complaint in the light most favorable to the plaintiff and accept its allegations as true.  *DirectTV, Inc. v. Treesh*, 487 F3.d 471, 476 (6th Cir. 2007).  To survive a motion to dismiss, the complaint must offer sufficient factual allegations that make the asserted claims plausible on their face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal conclusions couched as factual allegations will not suffice.  *Rondigo, LLC v. Township of Richmond*, 641 F.3d 673, 670 (6th Cir. 2011).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to the allegations in the complaint, the Court may also consider "other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice." *Ashland, Inc. v. Oppenheimer & Co., Inc*., 648 F.3d 461, 467 (6th Cir. 2011).[4]

---

[4]Higbee asks the Court to consider his affidavit and the arbitrator's opinion in making its analysis.  Because this is a motion to dismiss, considering these materials—which are not incorporated into the complaint—would be inappropriate.  The Court will confine its analysis to

## II.     The Institutional Defendants' Motion

In Counts I and II, Higbee alleges claims under the ELCRA against the Institutional Defendants.  In these counts, Higbee contends that his Facebook post was activity protected under the ELCRA. *See* M.C.L.A. §37.2701.  In the Institutional Defendants' motion, they argue that Higbee's post was too vague to constitute protected conduct.

The ELCRA provides that "a person shall not ... [r]etaliate or discriminate against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceedings, or hearing under this act." *MacDonald v. United Parcel Svs.*, 430 F. App'x. 453, 464 (6th Cir.2011) (quoting M.C.L.A. § 37.2701(a)).   The statute is commonly understood as having two clauses: the "opposition clause" and the "participation clause." *See e.g. Seals v. Bridgeport Spaulding School District*, 2018 WL 4829475 at *6 (E.D. Mich. 2018). At oral argument, Higbee asserted that he is bringing his ELCRA claims under both the opposition and participation clause.

### A.     Opposition

Higbee argues that his statement "oppose[d] two sections of the ELCRA: MCLA § 37.2402 and MCLA § 37.2701 itself." Pl.'s Res. 12-13. (ECF No. 32, PageID 377-378).

M.C.L.A. 37.2402(a) provides "an educational institution shall not...discriminate against an individual in the full utilization of or benefit from the institution, or the services, activities, or programs provided by the institution because of religion, race, color, national origin, or sex." Higbee argues that his post specifically complains that the University "failed to give students the

---

the factual allegations in the complaint and the facts that the parties have agreed the Court can consider.

full utilization or benefit of the institution by failing to recognize that black [] students were the

subject of a racist attack and threat." Pl.'s Resp 16.  But the text of the post does not support this

argument. Construing the post—as quoted in the Complaint—in Higbee's favor, the only arguably

discriminatory act that the University was alleged to have performed was "needlessly alienating

students who objected to racism." Compl. ¶ 26.  Even if this act could be fairly described as denying

the full utilization or benefit of the university, people who objected to racism are not a class

protected by M.C.L.A. 37.2402(a).   Thus, the Complaint does not contain sufficient factual

allegations to state a plausible claim that Higbee was opposing M.C.L.A. § 37.2402(a). *See Booker*

*v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312-1313 (6th Cir. 1989) (an employee

opposing a discriminatory practice must have a "good faith belief that the practice is unlawful.").

To the extent Higbee's post could be understood as opposing "institutional racist practices"

as a violation of M.C.L.A. § 37.2402(a), this argument also fails because there is no indication that

these alleged practices deny individuals the full utilization of or benefit from the institution.

Next, Higbee advances an "opposition to retaliation for opposition" argument; he argues that

his post was opposition to the University retaliating against the protesters for opposing the racist

graffiti.  But, to accept this argument, the Complaint would need to contain factual allegations to

support the conclusion that the graffiti, itself, could be fairly understood to be a violation of the

ELCRA. *Id*.

Thus, the Court concludes that Higbee's complaint does not contain factual allegations

sufficient to conclude that Higbee's post was protected opposition activity.

**B.     Participation**

At the outset, the parties disagree about what standard should control the Court's analysis under the participation clause.  Defendants argue that the Sixth Circuit's decision in *Booker*, 879 F.2d at 1313, which requires "the instigation of proceedings leading to the filing of a complaint or a charge," should control.  On the other hand, Higbee argues that the Michigan Court of Appeals' decision in *McElmore v. Detroit Receiving Hosp. and U. Med. Ctr.*, 196 Mich.App. 391 (1993) should control.

At least one other court in this district has confronted this precise issue. In *Gjokaj v. Crossmark, Inc.*, 2008 WL 1701532 (E.D. Mich. 2008), *aff'd* 362 Fed.App'x 450 (6th Cir. 2010), the Hon. Nancy Edmunds concluded that *McElmore* had "expressly rejected" the high standard announced in *Booker*, and that *McElmore* was applicable:

> Defendant cites *Booker* for the proposition that "the instigation of proceedings leading to the filing of a complaint or charge ... is a prerequisite to protection under the participation clause." *Booker*, 879 F.2d at 1313. This approach was expressly rejected by the Michigan Court of Appeals in *McLemore v. Detroit Receiving Hospital & University Medical Center*, 196 Mich.App. 391, 493 N.W.2d 441, 443 (Mich.Ct.App.1993). The *McLemore* court held that, "[r]egardless of the vagueness of the charge or the lack of formal invocation of the protection of the act, if an employer's decision to terminate or otherwise adversely effect [sic] an employee is a result of that employee raising the specter of a discrimination complaint, retaliation prohibited by the act occurs." *Id*. Defendant suggests that the Court should ignore *McLemore* because it expressly rejects Booker. (Def.'s Reply at 3 n. 1.) Defendant's suggestion is contrary to Sixth Circuit precedent, which holds that "this court is bound by decisions of the state's intermediate appellate courts unless convinced that the Michigan Supreme Court would decide the question differently." *United of Omaha Life Ins. Co. v. Rex Roto Corp.*, 126 F.3d 785, 789 (6th Cir.1997). Given that *McLemore* expressly rejected the Sixth Circuit's interpretation of Michigan law, and given that the Michigan Supreme Court declined to hear an appeal in the case, 506 N.W.2d 877 (1993), this Court is not convinced that the Michigan Supreme Court would decide the question differently than did the *McLemore* court. Accordingly, the Court will use the *McLemore* standard to assess Plaintiff's claim under the "participation clause."

*Gjokaj*, 2008 WL 1701532 at *6.

The Court agrees with Judge Edmunds's analysis in *Gjokaj*, and will examine Higbee's participation clause claim under the *McLemore* standard.

Under *McLemore*, participation activity is protected if it "rais[es] the spectre of a discrimination complaint." 196 Mich.App. at 396. However, "an employee must do more than generally assert unfair treatment." *Barrett v. Kirtland Community College*, 628 N.W.2d 63, 72 (Mich. Ct. App. 2001). Instead, the "charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to [ELCRA]." *Id.*

Higbee's post does not raise the specter of a claim of unlawful racial discrimination because his vague reference to "institutional racist practices" does not clearly convey the possibility that he would, or even could, assert a claim under the ELCRA. The University could not possibly have discerned which "institutional racist practices" Higbee was referring to in his post and, although an employee need not specifically invoke the ELCRA, Higbee's post did not even imply that the alleged practices could be fairly understood as violations of the ELCRA. *See Stevens v. Estes Exp. Lines*, 833 F.Supp.2d 729, 736 (E.D. Mich. 2011) (applying Michigan law and concluding that disclosure of a suggestive note to an employer was not participation activity when it did "not demonstrate actionable sexual harassment"). At most, the post generally alleged unfair treatment to third parties. Thus, it is not protected activity under the participation clause.

## CONCLUSION

For the reasons above, the Court **GRANTS** the Institutional Defendants' Motion to Dismiss Count I and Count II (ECF No. 28). Accordingly, the Court **DISMISSES** Eastern Michigan University and its Board of Regents from this action.

**IT IS SO ORDERED.**

Date: 6/17/2019                          s/Sean F. Cox
                                         Sean F. Cox
                                         United States District Judge